IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Executone of Columbus, Inc., *et al.*, | : | |
| Plaintiffs, | : | Case No.  2:06-cv-126 |
| v. | : | Judge Smith |
| Inter-Tel, Inc., *et al.*, | : | Magistrate Judge Abel |
| Defendants. | : | |

# Order

Plaintiffs Executone of Columbus, Inc., Executone Communications Solutions, Inc., CT-Innovations, LLC, Ideacom of the Gulf Coast, Inc., Ideacom Technologies of Georgia, Inc., and Ideacom Technologies, Inc. bring this action for breach of contract and promissory estoppel against Defendants Inter-Tel, Inc., (Inter-Tel) and Inter-Tel Business Information Systems, Inc. (IBIS).  This matter is before the Court on Defendants' April 27, 2006 Motion to Transfer Venue or Dismiss for Lack of Personal Jurisdiction (doc. 21).

## I.  Facts

Plaintiffs Executone of Columbus, Inc., Executone Communications Solutions, Inc., CT-Innovations, LLC, Ideacom of the Gulf Coast, Inc., Ideacom Technologies of Georgia, Inc., and Ideacom Technologies, Inc. are companies that sell telephony products to consumers.  (Compl. ¶¶ 14-19).  Defendants Inter-Tel and IBIS are Arizona corporations, and IBIS is a wholly-owned subsidiary of Inter-Tel.  (Compl. ¶¶ 7-8).

Each Plaintiff alleges that it entered into a separate distributorship agreement with a company called Executone Information Systems (EIS).  These contracts began anywhere from

October 1, 1996 and March 29, 1999 and were set to end on December 31, 2001.  (Compl. ¶¶ 14-19).  Thereafter, each agreement was to automatically renew itself for successive one-year terms unless terminated pursuant to the agreement.  (Compl. ¶¶ 14-19).

These agreements placed certain obligations on EIS, including the obligation to (1) provide technical and service support; (2) act in good faith with respect to all matters covered by the agreement; and (3) utilize best efforts to provide the Plaintiffs with authorized products that are competitive in the marketplace in function, feature, and price, and to develop new products and make them available to distributors.  (Compl. ¶ 22).  Plaintiffs contend that EIS did not meet these obligations because they "consistently failed to provide adequate service and technical support to Plaintiffs," and the only products made available were of such poor quality and design that they were not competitive in the marketplace.  (Compl. ¶¶ 24-27).

On October 17, 1999, Defendants entered into an asset purchase agreement with EIS.  (Compl. ¶ 29).  Plaintiffs allege that by so doing, Defendants assumed EIS's obligations and liability under Plaintiffs' distributor agreements.  (Compl. ¶¶ 29-30).  Plaintiffs contend that the Defendants' true motivation for purchasing EIS's telephony business was increase its own sales by over $100 million by closing EIS's headquarters, discontinuing the creation of new Executone products, converting Executone products to Inter-Tel products, and converting the Executone dealers' customer base to Inter-Tel products.  (Compl. ¶31).  Plaintiffs further allege that, over the course of several months, Defendants mislead them by making false assurances that they planned to continue providing the existing products, to develop new products, and that a severely problematic inventory shortage would be resolved by a certain date.  (Compl. ¶¶ 32-39).  Plaintiffs contend that they relied on Defendants' assurances to their collective detriment.

(Compl. ¶ 40).   Further, Plaintiffs allege that Defendants failed to meet their obligation to provide technical service to them, stating that the waiting times were "extremely long" and that the technical service provided was unknowledgeable and unhelpful and technicians were deliberately instructed by Defendants to falsely disavow that certain problems were widespread. (Compl. ¶¶ 44).

Plaintiffs allege that in May 2000, Defendants closed Executone's headquarters in Connecticut, which eliminated altogether technical and service support and caused them to further fail to fulfill their obligations to Plaintiffs.  (Compl. ¶¶ 45-46).   On August 9, 2000, Plaintiffs allege that Defendants greatly harmed their business by writing off the Executone acquisition and announcing that "the Executone business now offers no value from the Executone business, products and related trademark, brand and name" and that "no value exists in the goodwill originally recorded for the Executone operations."  (Compl. ¶ 47).   Finally, Plaintiffs contend that Defendants made the decision to discontinue several Executone product lines and to market another Executone product under the Inter-Tel line, which would effectively allow Inter-Tel to raid the Executone customer base.  (Compl. ¶ 49).   For the forgoing reasons, Plaintiffs bring this action against Defendants for breach of contract and promissory estoppel.

## II.  Arguments of the Parties

### A.  Defendants' Arguments

#### 1.  Claims against Inter-Tel

Defendants assert that the Court lacks personal jurisdiction over Inter-Tel as it is an Arizona corporation which does no business in Ohio, has not advertised in Ohio, and does not have offices or own property in Ohio.  Defendants support their assertion with the affidavit of

Kristen Bonfiglio, Inter-Tel's Assistant Secretary, which attests to Inter-Tel's lack of ties to

Ohio.  Furthermore, Defendants assert that IBIS, not Inter-Tel, was the party which purchased

EIS's assests.  Therefore, Defendants assert that this Court does not have jurisdiction over Inter-

Tel, and Plaintiffs' claims against it should be dismissed or transferred to the Eastern District of

Virginia.

Defendants argue that venue would be appropriate in the Eastern District of Virginia

because the distributorship agreements at issue requires that any claims brought under them be

evaluated under Virginia law.  Furthermore, Defendants allege that the distributorship

agreements contain a forum selection clause that lists the Eastern District of Virginia as one of

many venues that the parties agreed would be appropriate for suits arising out of the agreements.

However, Defendants do not contend that venue is merely inconvenient.

### 2.  Claims against IBIS

Defendants also contend that although IBIS does conduct some business in Ohio, that

five out of six of the Plaintiffs are suing it for activity that did not arise out of its business

contacts in Ohio.  To support this contention, Defendants attach the affidavit of Ray McCloud,

Senior Vice President of IBIS, who attests that, with the exception of Executone of Columbus

(EOC), IBIS did not conduct business in Ohio with Plaintiffs.  Defendants further argue that

Ohio law does not recognize general jurisdiction, and therefore the out-of-state Plaintiffs may

not sue IBIS based on claims that did not arise in Ohio.  Thus, Defendants maintain that only

EOC can properly bring suit against IBIS in this Court.

Defendants contend that in order for venue to be proper, it has to be proper as to *all*

parties and *all* claims.  Therefore, Defendants assert that Plaintiffs cannot obtain jurisdiction

4

over IBIS simply by virtue of the Court's specific jurisdiction over EOC's claims.  Thus,

Defendants argue that the Court should either dismiss all of the out-of-state Plaintiffs' claims

against IBIS, or, alternatively, argues that the Court should transfer the entire action to the

Eastern District of Virginia.

### B.  Plaintiff's Response

#### 1.  Inter-Tel

Plaintiffs dispute Defendants' contention that Inter-Tel is not liable under the

distributorship agreements. They make arguments that Inter-tel itself is a party to these

distributorship agreements and "directly connected with practically every allegation and claim in

Plaintiffs' Complaint."  Plaintiffs support their contention with evidence showing that (1) Inter-

Tel has previously allowed itself to be sued on one of the distributor agreements; (2) Inter-Tel

sent numerous letters to all Executone dealers listing itself as the purchaser of the agreements

and discussing the transaction ; and (3) Inter-Tel's executive officers made key decisions relating

to the Executone deal.

Plaintiffs contend that since EOC's claims arose from business activity that Inter-Tel

conducted in Ohio, Inter-Tel is subject to the specific jurisdiction on these claims.  In addition,

Plaintiffs contend because the Court is able to obtain specific jurisdiction over EOC's claims, it

is also able to consider the out-of-state Plaintiffs as properly joined to this action.

Plaintiffs state that Sixth Circuit precedent permits this Court to exercise general

jurisdiction over nonresident defendants.  Plaintiffs assert that Inter-Tel conducts business in

Ohio on its own.  Plaintiffs also contend that Inter-Tel conducts numerous business activities

through its subsidiaries in Ohio, and thus, is subject to the general jurisdiction of this Court

through the doctrines of merger and attribution.  Plaintiffs allege numerous facts regarding the relationship between Inter-Tel and its subsidiaries to support this contention, *see infra sec. III(B)(2)(b)*.

### 2.  IBIS

Plaintiffs claim that IBIS was party to a distributorship agreement with EOC. Plaintiffs further contend that EOC's claims are based on activity that Inter-Tel conducted in Ohio, making it subject to the specific jurisdiction of the courts on EOC's claims.  In addition, Plaintiffs contend since the Court is able to obtain specific jurisdiction over EOC's claims, then it is also able to consider the out-of-state Plaintiffs as properly joined to this action.

Plaintiffs also argue that IBIS is subject to the general jurisdiction of this Court because of its systematic and continuous business activity in Ohio.  They argue that IBIS is qualified to do business in OH, has done over $10 million in business in Ohio between the years of 2002-2004, and assumed distributorship agreements with five Ohio entities.

### C.  Defendants' Counter Response

Defendants repeat their contention that Ohio does not authorize general jurisdiction. They attack the Sixth Circuit precedent cited by Plaintiffs, stating that the Court misconstrued the word "solely" in the Ohio long arm statute in a way that caused them to incorrectly apply Ohio law.  Also, the Defendants claim that even if the Sixth Circuit was correct in allowing general jurisdiction, it only was able to do so because it was confronted with issues of federal, rather than state, law.  Finally, they argue that even if this Court is to hold that there is general jurisdiction in Ohio, it would still be improper to assert it over Defendants because they lack the requisite continuous and systematic contacts necessary for such an exercise.

6

Defendants also repeat their contention that with the exception of EOC's suit against IBIS, none of the activity sued upon arose from Defendants' Ohio contacts, and thus, Defendants are not subject to specific jurisdiction.  They claim that every fact supporting Plaintiffs' assertion that Inter-Tel and IBIS were involved in substantial business in Ohio is irrelevant because it either did not occur in Ohio or because it does not form the basis of Plaintiffs' claim against them.

Defendants further note that the doctrines of attribution and merger are not recognized in Ohio, and the only way that Plaintiffs could ascribe IBIS's contacts to Inter-Tel would be through piercing the corporate veil.  Defendants contend that Plaintiffs have not offered sufficient facts in order to pierce the corporate veil.

Finally, Defendants contend that joinder of the out-of-state Plaintiffs' claims is improper and not a basis for exercising personal jurisdiction.  They state that the out-of-state Plaintiffs' claims against IBIS cannot be joined under Rule 20(a) because they are not part of same transaction or occurrence.  Further, Defendants claim that Plaintiffs are unfairly forum-shopping in an attempt to keep their claims, which are time-barred in their own states, alive, and they also argue that they would be prejudiced by having to "defend against a host of unrelated actions" if the Court were to decide to join the claims.

### III. Jurisdiction

A party asserting that the Court has personal jurisdiction has the burden of proving it. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991);  *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974).  If the defendant supports its Rule 12(b)(2) motion to dismiss by affidavit, plaintiff "by affidavit or otherwise must set forth specific facts showing that the court

has jurisdiction." *Weller*, 504 F.2d at 930.  When presented with a properly supported Rule 12(b)(2) motion to dismiss, a court has the discretion to decide the motion on the briefs and affidavits or it may permit discovery and an evidentiary hearing.  *Theunissen*, 935 F.2d 1458.  In the absence of a preliminary evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction.  *Theunissen*, 935 F.2d at 1458; *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168-69 (6th Cir. 1988).  Further, the pleadings and affidavits are judged in a "light most favorable to the plaintiff."  *Theunissen*, 935 F.2d at 1459.

In diversity cases, courts look to the law of the forum state to determine whether personal jurisdiction exists.  *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1298 (6th Cir. 1989) (citing *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 376 n. 2 (6th Cir. 1968)).

The Sixth Circuit has set forth a two-prong inquiry to decide whether jurisdiction may be exercised over a non-resident defendant, stating, "[f]irst, the nonresident defendant must be amenable to process in the forum state" and "second, the court's exercise of personal jurisdiction over the defendant must comply with the precepts of federal due process as delineated in *International Shoe Co. v. State of Wash. Office of Unemployment Compensation and Placement*, 326 U.S. 310 (1945) and its progeny."  *See LSI Industries Inc., v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (6th Cir. 2000).

There are two types of personal jurisdiction recognized by the Sixth Circuit in Ohio. Specific jurisdiction may be exercised when a plaintiff's claim arises out of the defendant's contacts with the state.  *Helicopters Nacionales de Columbia v. Hall*, 466 U.S. 414 n.8 (1984). General jurisdiction may be exercised when a nonresident defendant has continuous and

systematic contacts with a state such that any cause of action can be asserted against him. *Kerry Steel v. Paragon Industries*, 106 F.3d 147, 149 (6th Cir. 1997); *see also Helicopters Nacionales de Columbia v. Hall*, 466 U.S. 408 (1984).

### A.   Specific Jurisdiction

 With respect to specific jurisdiction, the constitutional touchstone is whether the non-resident defendant established such minimum contacts with the forum state that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945); *Theunissen*, 935 F.2d at 1459.  The Sixth Circuit has established a three-part test to analyze whether a nonresident defendant is subject to specific jurisdiction in Ohio.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

 *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)*; see also Bird*, 289 F.3d at 874 (applying the Mohasco factors).

### 1.   IBIS

IBIS is subject to specific jurisdiction with regards to the lawsuit by Plaintiff EOC.  Even Defendants do not attempt to argue that this Court does not have specific jurisdiction over EOC's claims against IBIS, stating only that "this is an improper venue for the claims of the out-of-state Plaintiffs against IBIS."

Plaintiffs do not attempt to argue that the out-of-state Plaintiffs' claims, on their own, cause IBIS to be subject to specific jurisdiction.  Rather, they claim that since the Court already

has specific jurisdiction over EOC's claims against IBIS, then the Court can consider the claims

of the out-of-state Plaintiffs as properly joined under Fed. R. Civ. P. 20.  However, the case that

Plaintiffs cite to support their point, *U.S. Sprint Comms. Co. v. Mr. K's Foods, Inc.*, 624 N.E.2d

1048 (Ohio 1994), merely states that Fed. R. Civ. P. 18(a) enables courts to join out-of-state

claims with claims already properly brought by the same plaintiff against the same defendant.

The rule governing this situation is Fed. R. Civ. P. 20(a), which allows additional parties

to join the lawsuit.  Plaintiffs state there is no logical reason to distinguish between Rules 18 and

20 and therefore, out-of-state plaintiffs should be allowed to join a lawsuit by another plaintiff

already properly before this Court the same way that out-of-state claims may be added to claims

already properly brought by the same plaintiff against the same defendant.  However, this Court

disagrees.  If the law as were the Plaintiffs state, then for a defendant to be subject to specific

jurisdiction on one claim by one plaintiff would suddenly make him vulnerable to general

jurisdiction as to all other parties who arguably have claims arising out of the same transaction or

occurrence with common questions of fact or law.  This would unfairly allow Plaintiffs to bypass

the requirements of personal jurisdiction.  Thus, for the out-of-state Plaintiffs to continue their

action against IBIS in this Court, it must be subject to general jurisdiction.

### 2.  Inter-Tel

The Plaintiffs argue that Inter-Tel should be subject to specific jurisdiction in Ohio

because it is directly liable on the distributorship agreements, including the agreement with

EOC.  In order to support their contention, Plaintiffs allege that **(1)** Inter-Tel has previously

allowed itself to be sued on one of the Distributor Agreements (Morton Decl., Vol. 5 Tab 28 and

Exs. A, C) ; **(2)** Inter-Tel sent numerous letters to all Executone dealers listing itself as the

purchaser of the agreements and discussing the transaction, although Plaintiff admits that sometimes these letters were signed by "individuals who identified themselves as being officers of entities 'Inter-Tel Integrated Systems' and 'Inter-Tel Integration Systems'" (Bonfiglio Dep at 133:25-138:10, Exs. 17, 19, 20; Oakey Dep. Vol. 4, tab 22 at 158:15-17, Ex. 14) and; **(3)** Inter-Tel's executive officers made key decisions relating to the Executone deal.  (Compl. ¶¶ 45, 47; Bonfiglio Dep. Ex. 4 at 33; Racuhle Dep. Vol. 4, Tab 23 at 52:2-9, 55:11-15, 94:13-96:13; Mihaylo Trial Transcript Vol.3, Tab 17 at 1126:1-6; 1128:15-18; 1129:11-19; 1139:20-24; Kneip Trial Testimony Vol. 3, tab 15, Ex. 46).

Judging the evidence in a light most favorable to the Plaintiffs, *See Theunissen*, 935 F.2d at 1458, this Court finds that the facts alleged by Plaintiffs are sufficient to show that specific jurisdiction is proper over EOC's claim against Inter-Tel.

However, although this Court has specific jurisdiction over EOC's claims against Inter-Tel, Inter-Tel is not subject to specific jurisdiction in Ohio for the out-of-state Plaintiffs' claims. *See supra sec. III, A, 1.*

### B.  General Jurisdiction

A plaintiff seeking to bring an action against a nonresident defendant in Ohio may do so by obtaining general jurisdiction over the defendant.  *See LSI Industries Inc.*, 232 F.3d at 1375.

The Ohio Supreme Court has held that the Ohio long-arm statute does not extend to the requirements of the Due Process Clause.  *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 238 n.1 (Ohio 1994).  In several cases, this Court has taken this to mean that Ohio does not allow general jurisdiction over a nonresident defendant.  See *Coleman v. Chen*, 712 F. Supp. 117, 123 (S.D. Ohio 1988)("while it is certainly within the power of the State of Ohio to exercise jurisdiction

11

over causes of action not arising within the state, the state of Ohio has chosen not to do so");
*MacDonald v. Navistar International Transportation Corp.*, 143 F. Supp 2d 918, 923 (S.D. Ohio 2001)("Ohio's long-arm statute precludes general personal jurisdiction "); and *NCR Corporation v. PC Connections, Inc.*, 384 F. Supp. 2d 1152, (S.D. Ohio 2005)("this Court will defer to its previous interpretations of the Ohio long-arm statute, finding no general personal jurisdiction").

However, the Sixth Circuit has held otherwise.  In *LSI Industries*, the Sixth Circuit held that if Ohio's long-arm statute is the sole basis for jurisdiction, then its application is limited to causes of action arising from its enumerated acts, but they went on to hold that the existence of Ohio's long arm statute does not completely preclude a court's ability to gain general jurisdiction over a nonresident defendant in Ohio.  In so deciding, the Sixth Circuit relied on the Supreme Court of Ohio decision in *Perkins v. Benguet Consol. Min. Co.*, 158 Ohio St. 145 (Ohio 1952).  The court in *Perkins* stated :

> Where jurisdiction is not limited by statutes to causes of action arising within the state, an action on a transitory cause may be maintained in the courts of this state by a nonresident against a foreign corporation doing business here, although the cause did not arise here or related to the corporation's business transacted here.

*Id.* at 145.  As *Perkins* was decided before the Ohio long-arm statute was enacted, the Sixth Circuit in *LSI Industries* took care to state that the statute "fails to supplant the viability of *Perkins*."  *LSI Industries*, 232 F.3d at 1373.  The Sixth Circuit based their reasoning on the fact that the Ohio long-arm statute states "[w]hen jurisdiction over a person is based *solely* upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."  O.R.C. §2307.382 (emphasis added).  The Sixth Circuit took"solely" to mean that it was possible for courts in Ohio to obtain personal jurisdiction over a nonresident for actions

12

not listed in the long-arm statute. *See LSI Industries*, 232 F.3d at 1373. For this reason, the Sixth Circuit explicitly held that "a defendant conducting activity that meets the federal due process threshold for general jurisdiction is necessarily amenable to process under Ohio's 'doing business' standard as described in *Perkins*." *Id*. at 1374.

Furthermore, several recent Sixth Circuit and Southern District have implemented the holding in *LSI Industries* and have performed factual analyses of whether the nonresident defendants were subject to general jurisdiction in Ohio. See *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); *Bradford Company v. Afco Manufacturing*, 2006 U.S. Dist. LEXIS 3990 at *9 (S.D. Ohio 2006); *Pierson v. St. Bonaventure University*, 2006 U.S. Dist. LEXIS 4662 at *3-4 (S.D. Ohio 2006). In fact, in a recent opinion, this Court held that "[a]lthough there are a smattering of lower court decisions which have expressed the view that Ohio does not recognize the concept of 'general jurisdiction' over an out-of-state defendant, the Courts of Appeals held otherwise." *See Pierson*, 2006 U.S. Dist. LEXIS 4662 at *11. Notably, *Pierson* contained issues of both federal and state law.

A court has general jurisdiction over a nonresident defendant who has "continuous and systematic contacts with the forum state sufficient to justify the State's judicial power with respect to any and all claims." *Kerry Steel v. Paragon Industries*, 106 F.3d 147, 149 (6th Cir. 1997); *see also Helicopters Nacionales de Columbia v. Hall*, 466 U.S. 408 (1984). This is a difficult standard to meet, as it involves a "more stringent minimum contacts test," *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996), and "requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); see also *Pierson*, 2006 U.S.

13

LEXIS 4662 at *12.

### 1.  IBIS

The Sixth Circuit has held that a corporation's "millions of dollars in sales of lighting products in Ohio over the past several years and its broad distributorship network in Ohio" constitute the continuous and systematic contacts necessary to subject it to general jurisdiction. *LSI Industries.*  232 F.3d at 1375.

In the present case, the record reflects that IBIS has done over 10 million in business in Ohio over the course of several years.  (Exhibit 2, Sherman Dep. at 44-:4-45:21, Sherman Dep. Exhibit 36).  Further, Plaintiffs allege that IBIS was the successor to the EIS distributorship contracts which caused it to assume contractual relationships with EOC and four other Ohio distributors of telephony products, namely Executone of Dayton, Executone of Cincinnati, Executone Communications Systems, and Execom Inc.  (Vol. 5, Tab 27, ¶5).  Based on its large volume of sales and its alleged Ohio distributorship network, this Court finds that Plaintiffs have made a *prima facie* case that IBIS is subject to general jurisdiction because of its continuous and systematic contacts with Ohio.

### 2.  Inter-Tel

#### a.  Inter-Tel's own contacts with Ohio

The record reflects that Inter-Tel is currently party to a contract with an agency of the State of Ohio.  (Vol. 5, Exhibit 32).  Further, the records reflects that Inter-Tel made a $9998.86 sale to the Ohio Department of Insurance.  (Vol. 5, Exhibit 32).

There are phonebook listings in Inter-Tel's name in Cincinnati from 2002-2006, in Columbus from 2002-2005, and Dayton in February 2002, and box advertisements in Inter-Tel's

14

name in the Columbus Yellow Pages in 2002-2005. (Vol. 5, Exhibit 29). Defendants contend

that these listings and advertisements were mistakenly made in the name of Inter-Tel. According

to Defendants, the listings actually recited the addresses and phone numbers of Inter-Tel

Technologies, which was also the company who paid for the listing fees.

      Plaintiffs claim that Inter-Tel leased property in Cincinnati, and provide evidence of an

amendment to a lease listing Inter-Tel as the lessee. (Bonfiglio Dep. Exhibit 11). However,

Defendants argue that the listing of Inter-Tel as the lessee on this document was done in error,

and that Inter-Tel Technologies was the true lessee. To support their contention, Defendants

provide a document which amends the lease, corrects the mistake, and lists Inter-Tel

Technologies as the lessee. (Exhibit D, Bonfiglio Dep. 125-127).

      The record reflects that Inter-Tel filed a consolidated Commercial Activity Tax (CAT)

return with the state of Ohio in 2006 as well as filing annual payroll tax returns with both the

State of Ohio and local Ohio entities from at least 1999. (Sherman Dep. at 16:1-18:17 and 23:3-

12). Overall, the record reflects that Inter-Tel has reported to the State of Ohio that it has paid

wages to Ohio employees of over $22 million since the beginning of 2000. (Vol. 2, Tab 8).

Defendants contend that the only reason that Inter-Tel and its subsidiaries file on a joint basis is

to save money, stating that "a company that did business in Ohio through subsidiaries would

effectively be taxed twice if it did not file a consolidated CAT return . . . the filing does not

indicate in any way that Inter-Tel was conducting business in Ohio." Further, Defendants argue

that the wages to Ohio employees in the annual payroll tax returns were paid to employees of

Inter-Tel's subsidiaries and states "Inter-Tel has no employees in Ohio, and thus, it pays no

payroll tax to the state of Ohio."

The individual contacts that Inter-Tel has with Ohio are not continuous and systematic, and thus do not subject it to this Court's general jurisdiction.  First, the current contract with an Ohio agency and the sale of $9,998.86 under it are *de minimis* as this only amounts to .02% of Inter-Tel's revenue for 2005.  (Def. Reply p.26).  Also, Plaintiffs have failed to show that  Inter-Tel leased any property in Ohio as Defendants have shown that the lease in question was made out in error.  Advertising on the radio or in newspapers and magazines in a forum state has been held to be enough to assert personal jurisdiction.  *Logue v. Siesta 4-Rent*, 2005 U.S. Dist. LEXIS 12074 at * 13 (S.D. Ohio June 17, 2005).  However, a mere listing or box advertisement in the phonebook does not rise to the same level.  Thus, such advertisements are *de minimis* in this case.  Defendants also offer evidence through the deposition of Ms. Sherman that the tax returns were simply consolidated to save money, as were the federal returns and the Ohio and local payroll tax returns, and not because Inter-Tel actually conducted commercial activity in Ohio. In short, Plaintiffs have not met the very stringent requirements for making a *prima facie* case of general jurisdiction.

### b.  Inter-Tel's relationship with subsidiaries

Plaintiffs claim that Inter-Tel is also subject to general jurisdiction based on its relationships with five of its subsidiaries which do business in Ohio.  However, besides naming the business purpose of each of these subsidiaries and stating their substantial sales figures amounts in Ohio for a period of years, the Plaintiffs allege no other specific facts to support a finding of general jurisdiction over these companies.  (Exhibit 2).  Yet, this Court found in *sec. III, B, 1* of this opinion that IBIS was subject to general jurisdiction in Ohio.  Thus, this Court will only consider whether Inter-Tel will be subject to general jurisdiction in Ohio on the basis

of its relationship with IBIS.

Plaintiffs allege that Inter-Tel is subject to general jurisdiction in Ohio because under the doctrines of merger and attribution, IBIS's amenability to jurisdiction will be imputed to Inter-Tel.  Defendants respond that the doctrines of merger and attribution are not recognized in Ohio law, and therefore, argue that in order to analyze Plaintiffs' claim, the Court must apply the alter ego doctrine.

### 1.  Merger and Attribution

This Court has used the theories of merger and attribution in order to determine whether a nonresident defendant was subject to personal jurisdiction in Ohio based on its relationship with its subsidiary.  *See In re Telectronics Pacing Systems, Inc.*, 953 F. Supp. 909, 920 (S.D. Ohio 1997).

The theory of attribution is that a subsidiary conducts business on behalf of its parent, and thus, the parent "'purposefully avails' itself of doing business in the forum by accessing the market through a subsidiary." *Id.* at 919.  Attribution most typically occurs when a nonresident parent distributes its products in the forum through the use of a subsidiary but can also be found when a "parent uses the subsidiary to do what it otherwise would have done itself." *Id.* at 919 (quoting *Gallagher v. Mazda Motor of American, Inc.*, 781 F. Supp. 1079, 1085 (E.D. Pa. 1992).

Merger is the notion that the parent and subsidiary are "so closely aligned that it [sic] reasonable for the parent to anticipate being 'haled' into court in the forum because of its relationship with its subsidiary." *See In re Electronics*, 953 F.3d at 919.  Under the doctrine of merger, a parent can be subject to personal jurisdiction on the basis of its relationship with its subsidiary.  This Court has laid out several factors to analyze whether a parent and subsidiary are

17

"merged" for jurisdictional purposes, including "an overlap in board of directors and officers, interchange of personnel between the parent and the corporation, exchange of documents and records between the parent and the subsidiary, listing subsidiary as a branch, agent or division of the parent, or indicating that the subsidiary and parent are part of the same entity." *Id.* at 19.

Plaintiffs argue that IBIS's contacts should be imputed to Inter-Tel under the doctrine of attribution because Inter-Tel did business in Ohio through IBIS.  Plaintiffs support their contention by stating that despite Inter-Tel's description of itself in its SEC 10K form as a "single point of contact, full services provider" of a wide range of Inter-Tel branded telephony equipment and services, its own representative has stated that Inter-Tel earns only "interest income from its investments" (Bonofiglio 21:11-15).  Plaintiff argues this shows that Inter-Tel is using its subsidiaries, including IBIS, to do business as a telephony provider in Ohio.  After adding these allegations to Plaintiffs' allegations that Inter-Tel is the actual party in interest to the EIS distributorship agreements, see supra *sec. III, A, 1*, the Court finds that Plaintiffs have made out a *prima facie* case that IBIS's contacts can be attributed to Inter-Tel for jurisdictional purposes.

Next, Plaintiffs argue that Inter-Tel is so closely linked to IBIS that they should be merged for jurisdictional purposes.   There are several facts that support Plaintiffs' argument. Inter-Tel and IBIS share many of the same officers and board members.  (Exhibit 1 )(doc. 40-2). IBIS's books and records are kept at Inter-Tel's headquarters in Arizona.  (Bonfiglio Dep. at 74:15-76:1).  Inter-Tel has signed as guarantor to IBIS's purchase agreement with EIS. (Bonfiglio Dep. At 62:18-62:24).

However, while the records shows evidence that top players at Inter-Tel do ultimately

control key business decisions at IBIS and the other subsidiaries (Bonfiglio Dep. Ex. 4 at 33;

Rauchle Dep. Vol. 4, Tab 23 at 52:2-9, 55:11-15; 94:13-96:13; Mihaylo Trial Transcript Vol. 3,

Tab. 15, Ex. 203.), there is no evidence that it controls what occurs in the day-to-day operations

of IBIS.  Further, although Plaintiffs argue that "Inter-Tel has also expressly listed . . . IBIS as a

division of itself," the only evidence they offer are letters that, as they admit, do not mention

IBIS.  This can hardly be said to be an "express" admission that IBIS is a division of Inter-Tel.

At best, it is a negative implication that IBIS was part of Inter-Tel.  However this is not enough

to say that IBIS and Inter-Tel are merged for jurisdictional purposes.

### 2. Alter Ego

Generally, a parent corporation is not liable for the actions of its subsidiary, even if it is

wholly owned.  *See Bradford*, 2006 LEXIS 3990 at *10 ("the corporate form is not disregarded

without good reason.")  However, if the parent exercises such control over the subsidiary that it

has no separate will, mind, or existence of its own, then the parent can be considered the

subsidiary's alter ego for jurisdictional purposes.  *Belvedere Condominium Unit Owners' Ass'n*

*v. R.E. Roark Co., Inc.*, 67 Ohio St. 3d 274, 289 (Ohio 1993); see also *Microsys Computing, Inc.*

*v. Dynamic Data Systems, LLC*, 2006 U.S. Dist LEXIS 53397 at *20 (N.D. Ohio August 2,

2006)("The Ohio alter ego doctrine is part of the first prong of the Belvedere test for piercing the

corporate veil"). Although this is simply the first factor used in attempting to pierce the corporate

veil, the Court need not consider the other factors because "for jurisdictional purposes, unlike for

liability purposes, use of control to commit a fraud or wrong is not required."  *Microsys*

*Computing*, 2006 U.S. Dist LEXIS 53397 at *21.

When evaluating whether a parent's control over a subsidiary is such that the subsidiary

is merely an alter ego of the parent, "Sixth Circuit cases and Ohio law require demonstration of financial dependency between corporations and demonstration of nonobservance of corporate formalities." *Id.* at *25.  Furthermore, the decision maker may use several factors, such as "sharing the same employees and corporate officers, engaging in the same business enterprise, having the same address and phone line, and using the same assets (i.e., letterhead, equipment), completing the same jobs, not maintaining separate books, tax returns and financial statements, and exerting control over the daily affairs of another corporation" to see if there is an alter ego relationship at issue.  *See id.* at *21.

 The record provides several facts which would support a finding that the relevant subsidiaries are alter egos of Inter-Tel for jurisdictional purposes.  First, Inter-Tel and IBIS share many of the same officers and board members.  (Exhibit 1 )(doc. 40-2).  IBIS's books and records are kept at Inter-Tel's headquarters in Arizona.  (Bonfiglio Dep. at 74:15-76:1.)  Furthermore, Inter-Tel files consolidated tax returns for itself and all of its subsidiaries, including IBIS.

However, there are several factors that militate against finding that Inter-Tel so controls IBIS such that they have an alter ego relationship.  First, there seems to be an observance of corporate formalities, as even Plaintiffs admit that at least on paper, Inter-Tel recorded the transactions itself and its subsidiaries.  (Pl.'s Opp. P. 7).  Further, although the books and records of the subsidiaries are kept at Inter-Tel's Arizona headquarters, there is no allegation that the books and records of the subsidiaries are not separate from Inter-Tel's own books.  *Id.*  While there is evidence that top players at Inter-Tel do control final key business decisions, there is no evidence that it controls the day-to-day operations of IBIS.   (Compl. ¶¶ 45, 47; Bonfiglio Dep.

Ex. 4 at 33; Racuhle Dep. Vol. 4, Tab 23 at 52:2-9, 55:11-15, 94:13-96:13; Mihaylo Trial

Transcript Vol.3, Tab 17 at 1126:1-6; 1128:15-18; 1129:11-19; 1139:20-24; Kneip Trial

Testimony Vol. 3, tab 15, Ex. 46).

At the very least, Sixth Circuit precedent requires financial dependency and

nonobservance of corporate formalities.  *Microsys Computing*, 2006 U.S. Dist LEXIS 53397 at

*25.  Plaintiffs fail to provide sufficient facts to overcome the "general presumption that one

company operates independently from another."  *Microsys Computing*, 2006 U.S. Dist LEXIS

53397 at *25.  Thus, the Court finds that the facts presented do not support the exercise of

general jurisdiction over Inter-Tel on the basis of an alter ego relationship.

## IV.  Venue

Defendants have failed to allege that the venue selected by Plaintiff is inconvenient under

28 U.S.C. §1404, contending only that venue is improper under 28 U.S.C. §1406.  Thus, since

this Court deems venue to be proper, and has no reason to consider whether or not it is

convenient, this case should not be transferred to the Eastern District of Virginia.

## V.  Conclusion

For the reasons stated above, this Court finds Defendants' April 27, 2006 Motion to

Transfer Venue or Dismiss for Lack of Personal Jurisdiction (doc. 21) to be without merit, and

thus, it is DENIED.

/S/ George C. Smith
United States District Judge
